

FILED
JAN 23 2018
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Mohammad Jadun<br>6271 St. Andrews Dr.<br>Canfield, Ohio 44406<br><br>    PLAINTIFF<br><br>Vs.<br><br>Youngstown State University<br>1 University Plaza<br>Youngstown, Ohio<br>44555<br><br>    AND<br><br>Becky Varian, Individually and in her Capacity<br>As Director of the Center for Student Progress<br>At Youngstown State University<br>1 University Plaza<br>Youngstown, Ohio<br>44555<br><br>    AND<br><br>Michael Reagle, Individually and in his Capacity<br>As Associate Vice President for Student Services<br>1 University Plaza<br>Youngstown, Ohio<br>44555<br><br>    DEFENDANTS | )<br>)<br>)<br>) 4:18 CV 176<br>) CASE No.<br>) JUDGE PEARSON<br>)<br>) JUDGE _____<br>)<br>) MAG. JUDGE LIMBERT<br>) Wrongful Termination<br>) Religious Discrimination<br>) Under Title VII And<br>) O.R.C. 4511.02<br>)<br>) Jury Demand<br>) |

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended and O.R.C. 4112. 02.

2. This Court, pursuant to 28 U.S.C. §1331, has federal question subject matter jurisdiction over the primary claims in this case. This Court has supplemental jurisdiction over Plaintiff's state law claims by virtue of Title 28 U.S.C. §1367

## PARTIES

3. Dr. Mohammad Jadun is a resident of the State of Ohio, County of Mahoning.

4. Dr. Jadun has a P.H.D. in Education from Southern Illinois University at Carbondale.

5. Since December 2013 Dr. Jadun was the Intervention Coordinator in the Center for Student Progress at Youngstown State University. Prior to that Dr. Jadun was employed by Youngstown State University as an Instructional Technology Specialist since 2004.

6. Dr. Jadun was qualified for his position.

7. Dr. Jadun is, and was at all times relevant to this Complaint, a devout, practicing Muslim.

8. Dr. Jadun was an "employee" of Defendant Youngstown State University under 42 U.S.C. §2000e-(f), and Chapter 4112 of the Ohio Revised Code Dr. Jadun is also an eligible employee within the meaning of 29 U.S.C. §2611.

DEFENDANTS

9. Youngstown State University is an institution of higher learning operated by a Board of Trustees appointed by the State of Ohio.

10. YSU is an employer within the meaning of Title VII, the FMLA and Ohio Revised Code Chapter 4112. YSU acts under color of law.

11. As a public entity in the state of Ohio, YSU is constitutionally prohibited from discriminating against an employee on the basis of their religion.

12. Becky Varian is the Director for the Center for Student Progress at Youngstown State University. Becky Varian is an agent of Youngstown State University.

13. Defendant Varian acts pursuant to and under color of law, and is a person within the meaning of 42 U.S.C. §1983. She acts directly in the interest of an employer. She is sued individually and in her official capacity.

14. Michael Regale is the Associate Vice President for Student Success at Youngstown State University and is an agent of Youngstown State University.

15. Defendant Reagle acts pursuant to and under color of law, and is a person within the meaning of 42 U.S.C. §1983. He acts directly in the interest of an employer. He is sued individually and in his official capacity.

## STATEMENT OF FACTS

16. On December 2nd 2015 in San Bernardino California a Muslim man committed an act of terrorism that resulted in multiple deaths and injuries. The case received nationwide media attention.

17. On December 9, 2015 Becky Varian, Plaintiff's immediate supervisor summoned Plaintiff to a meeting in her office.

18. While in Ms. Varian's office she proceeded to inform Dr. Jadun that "You Muslims are terrorists and are killing Christians and Jews." This was the only matter discussed and the meeting ended.

19. On December 10, 2015 Ms. Varian forwarded an email with a link to the Plaintiff to an article titled "Why do People Join Isis? Here's what they say when you ask them".

20. Prior to this, Ms. Varian had performed a performance review of the Plaintiff's work in 2014 in January of 2015 which resulted in all satisfactory reviews with positive comments provided by Ms. Varian.

21. In January of 2016 Becky Varian performed another performance review, which included unsatisfactory findings for Job Knowledge, Planning, Administration, Communication and Professional Development.

22. Throughout the calendar year 2015 Dr. Jadun had not received any complaints or criticisms from anyone in the Youngstown State University Administration or Ms. Varian for his performance Job Knowledge, Planning, Administration, Communication and Professional Development.

23. For his work performance in 2015 and 2016, Youngstown State University students who had received services from Dr. Jadun, provided student reviews which were all positive.

24. Following the negative 2016 review for his work in 2015, Dr. Jadun was required to comply with a performance plan from June 2016 to August 2016 developed by Ms. Varian. Dr. Jadun complied with the requirements of the plan.

25. Youngstown State University conducts resource fairs to inform students of what resources are available to the students from the Center For Student Progress.

26. Prior to the summer of 2016, multiple coordinators had been assigned to each fair and the assignments of the time slots for the fair were equally assigned to the four coordinators employed by the Center for Student Progress.

27. Starting in the summer of 2016, Ms. Varian assigned all of the resource fair time slots to Dr. Jadun without a second coordinator.

28. In order to use the services of the center, Students would be required to sign a contract. The meetings with the students to go over the contract requirements was called a contract signing.

29. There was no official policy or rule regarding the length of time a coordinator could spend in a contact meeting to advise and answer student's questions before signing the contract.

30. In the summer months, the Center for Student Progress is not used by the students as much as it is during the fall and spring semesters.

31. Prior to the summer of 2016 Dr. Jadun had conducted contract signing meetings that ranged in length up to one hour.

32. In the summer of 2016, while the Center was not busy, Ms. Varian criticized Dr. Jadun for spending too much time in a meeting with a nursing student who asked a lot of questions and who required a lot of guidance. Ms. Varian advised that the meetings should not take longer than fifteen minutes.

33. In the summer of 2016 Ms. Varian started contacting some individual students that Dr. Jadun had met with seeking criticisms of his performance in interacting with them, despite the fact that he had previously recurved positive performance reviews from students and no other coordinators students were being contacted for this purpose.

34. In 2016 Ms. Varian and Michael Reagle brought pretextual, unfair, arbitrary and unjustified complaints to the Human Resources Department regarding Dr. Jadun's work performance, including that she had observed him with his feet up on his desk and she

overheard him whistling, he left materials at the resource fair, that he spent more than fifteen minutes with a student in a contract meeting and others. These criticisms resulted in disciplinary hearing on September 8, 2016.

35. Following the disciplinary hearing Dr. Jadun was notified on September 9, 2016 that he was to receive a five day unpaid suspension that was to take effect on September 23, 2016.

36. Prior to serving or challenging the disciplinary action, Ms. Varian falsely accused Dr. Jadun of insubordination for raising his voice and being argumentative in two conversation with fellow employees, Robin Sakony White and Noreen Yazvac, regarding work matters.

37. Robin Sakony White was the Assistant Director of Student Tutorial Services, a fellow employee and not the supervisor of Dr. Jadun.

38. Noreen Yazvac was an administrative assistant and not a supervisor of Dr. Jadun.

39. Dr. Jadun did not raise his voice at or becoming argumentative in either conversation.

40. Dr. Judan was placed on administrative leave pending another disciplinary hearing before human resources.

41. Following the hearing with the human resources department, Dr. Judan was terminated from his employment with Youngstown State University by Dr. Michael Reagle.

42. The termination was unjustified.

43. Dr. Jadun filed a complaint of employment discrimination under Title VII of the Civil Rights Act of 1964 with the E.E.O.C. on the 9th day of December, 2016.

44. Dr. Jadun exhausted the administrative remedies available to him and received a Dismissal and Notice of Rights letter October 23, 2017.

## COUNT ONE

45. Plaintiff realledges each and every paragraph and allegations set forth in this Complaint.

46. Defendants subjected Plaintiff to differential treatment based on religion in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e.

47. The Plaintiff is a Muslim.

48. The Defendants treated Plaintiff differently than employees who were not Muslim. This differential treatment included, but is not limited to, unjustified and arbitrary performance reviews, assignment of all student fair activities to the Plaintiff, unsolicited follow-up calls to students seeking criticism of the Plaintiff, the imposition of a fifteen minute limit for student contract meetings, termination for alleged insubordination to fellow employees who were not Dr. Jadun's supervisor and subjecting Dr. Jadun to different policies and standards that other, non-Muslim, employees were not subjected to.

49. Plaintiff was terminated as a result of Defendant's differential treatment based on religion.

50. The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise adversely affect Plaintiffs' status as an employee due to his religion.

51. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to Tilte VII which protects Plaintiff.

52. As a direct and proximate cause of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, costs and other expenses and suffered serious damages.

## COUNT TWO

53. Plaintiff realledges each and every paragraph and allegations set forth in this Complaint.

54. Plaintiff discriminated against the Plaintiff on the basis of his religion through the differential treatment noted herein.

55. The unlawful employment practices complained of above were intentional and were performed with malice and/or reckless indifference in violation of O.R.C. 4112.02.

56. As a direct and proximate cause of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, costs and other expenses and suffered serious damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

    a. That Defendants be required to make him whole for their adverse, discriminatory and unlawful actions through restitution in the form of back pay, with interest;

b. That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

c. That Plaintiff be awarded punitive damages;

d. That the Court award Plaintiff reasonable attorney fees, costs and disbursements pursuant to state and federal law;

e. That the Court grant such other relief as it deems fair and equitable.

Respectfully submitted,

*Mohammad S. Jadun*
Dr. Mohammad Jadun
Pro Se

## INSTRUCTIONS FOR SERVICE

Please issue a Summons and serve the Summons and a copy of the Complaint upon the Defendant at the address in the caption, by certified U.S. Mail.

*Mohammad S. Jadun*
Dr. Mohammad Jadun
Pro Se

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS A JURY TRIAL IN THE ABOVE CAPTIONED MATTER.

*Mohammad S. Jadun*
Dr. Mohammad Jadun
Pro Se